Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| MS Distributors, LLC<br><br>Peticionario<br><br>v.<br><br>José Luis Rodríguez Centeno; Yvonne Gisselle Otero; Sociedad de Bienes Gananciales Rodríguez-Otero; Synergy Factory LLC, Et. Al.<br><br>Recurridos | KLCE202400072 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito<br><br>Caso Núm. CO2022CV00197<br><br>Sobre: Solicitud de Interdicto Preliminar y Permanente al amparo de la Ley de Secretos Comerciales, y otras causas de acción relacionadas |

Panel integrado por su presidente, el Juez Hernández Sánchez[2], el Juez Bonilla Ortiz, y el Juez Pagán Ocasio.

Pagán Ocasio, juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 14 de febrero de 2024.

## I.

El 19 de enero de 2024, MS Distributors, LLC (MS Distributors o parte peticionaria) presentó una *Petición de Certiorari* ante nos en la que solicitó que modifiquemos una *Orden Enmendada* de *injunction* emitida por el Tribunal de Primera Instancia, Sala Superior de Aibonito, (TPI o foro primario) el 13 de diciembre de 2023, y notificada y archivada el 20 de diciembre de 2023.[3] Mediante el dictamen, el TPI eliminó el inciso (3) de una *Orden* de *injunction* notificada y archivada el 28 de noviembre de 2023, por el cual les

---

[1] OAJP-2021-086 del 4 de noviembre de 2021.
[2] Mediante Orden Administrativa OATA-2024-014, se designa al Juez Juan R. Hernández Sánchez, en sustitución de la Jueza Birriel Cardona, quien dejó de ejercer funciones como Jueza del Tribunal de Apelaciones.
[3] Apéndice de la *Petición de Certiorari*, págs. 5-7.

ordenaba a los co-demandados a "no confección[ar] versiones modificadas o diluidas de los productos de la demandante".[4]

El 19 de enero de 2024, la parte peticionaria también presentó una *Moción en Auxilio de Jurisdicción* en la que solicitó que le expidiéramos la *Petición de Certiorari* expeditamente, y le asignáramos este recurso al Panel VI del Tribunal de Apelaciones, integrado por la entonces Jueza Birriel Cardona, el Juez Bonilla Ortiz y el Juez Pagán Ocasio, por haber sido el panel que dictó la *Sentencia* del 27 de marzo de 2023, la cual resolvió el recurso de *certiorari* presentado por MS Distributors en el caso KLCE202300021, y que versa sobre el mismo pleito ante el foro *a quo*.

El 22 de enero de 2024, emitimos una *Resolución* por la cual le concedimos al señor José Luis Rodríguez Centeno (señor Rodríguez Centeno), a la señora Yvonne Giselle Otero (señora Otero Maldonado), a la Sociedad de Bienes Gananciales Rodríguez Otero y a Synergy Factory, LLC (Synergy) (en conjunto, parte recurrida) hasta el 23 de enero de 2024, en o antes de las 3:00p.m., para exponer su posición respecto a la *Moción en Auxilio de Jurisdicción.* Además, le concedimos un término de diez (10) días, contados a partir de la notificación de dicha *Resolución,* para exponer su posición respecto a los méritos del recurso de *certiorari.*

El 23 de enero de 2024, el señor Rodriguez Centeno, su esposa, la señora Otero Maldonado, y la Sociedad de Bienes Gananciales compuesta por ambos presentaron una *Oposición a Moción en Auxilio de Jurisdicción* por la cual solicitaron que denegáramos la misma y no expidiéramos la *Petición de Certiorari.*

Ese mismo día, Synergy presentó una *Oposición a Moción en Auxilio de Jurisdicción* en la cual expuso dos (2) argumentos

---

[4] Íd., págs. 10-11.

principales: (1) la parte peticionaria nunca probó ni el foro primario o este tribunal determinaron que Synergy se apropió de los secretos comerciales de MS Distributors; y (2) MS Distributors nunca ha desfilado prueba indicativa de que las fórmulas de Synergy son producto de apropiación ilegal de los secretos comerciales de la parte peticionaria.

El 23 de enero de 2024, luego de evaluar la solicitud de auxilio y sus respectivas oposiciones, emitimos una *Resolución* mediante la cual denegamos la *Moción en Auxilio de Jurisdicción.*

El 25 de enero de 2024, MS Distributors presentó *una Moción Solicitando Reconsideración de Resolución Denegando Moción en Auxilio de Jurisdicción* por la cual insistió en que reconsideráramos la denegatoria de la petición en auxilio de jurisdicción.

El 26 de enero de 2024, emitimos una *Resolución* por la cual denegamos la solicitud de reconsideración de la parte peticionaria en esa etapa de los procedimientos.

Ese mismo día, el señor Rodríguez Centeno, la señora Otero Maldonado y la Sociedad de Bienes Gananciales presentaron una *Moción Solicitando Órdenes*, mediante la cual solicitaron eliminar tanto el CD como las páginas 34 y 35 del Apéndice de la *Petición de Certiorari* arguyendo que no formaron parte del expediente judicial en el foro primario en contravención con la Regla 74 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 74. Además, solicitaron la eliminación parcial de la transcripción incluida en el recurso de *certiorari*, y en la alternativa, que ordenáramos a MS Distributors a transcribir y presentar la totalidad de la vista.

El 29 de enero de 2024, emitimos una *Resolución* mediante la cual le concedimos a la parte peticionaria cinco (5) días para que expusiera su posición en torno a la *Moción Solicitando Órdenes.*

El 1 de febrero de 2024, el señor Rodríguez Centeno, la señora Otero Maldonado y la Sociedad de Bienes Gananciales presentaron una *Oposición a Solicitud de Certiorari*.

Ese mismo día, Synergy presentó un *Alegato* en el que solicitó que denegáramos la *Petición de Certiorari*.

El 5 de febrero de 2024, MS Distributors presentó una *Moción en Cumplimiento de Orden y conforme a la Regla 74 (C)*, por la cual alegó que es imperativo que tengamos acceso al vídeo del 13 de julio de 2023,[5] pues el mismo sirve para probar que el señor Rodríguez Centeno trabaja para la parte recurrida mezclando productos y no solo validando materiales. También presentó una *Moción Solicitando Autorización para Presentar Transcripción de Vista Argumentativa bajo la Regla 76*.

El 9 de febrero de 2024, emitimos una *Resolución* por la cual denegamos la *Moción Solicitando Autorización para Presentar Transcripción de Vista Argumentativa bajo la Regla 76*, pues el único señalamiento de error formulado por la parte peticionaria no cuestiona la apreciación de la prueba. Por lo tanto, la transcripción de la vista argumentativa celebrada el 13 de diciembre de 2023 es innecesaria. También denegamos la *Moción en Cumplimiento de Orden y conforme a la Regla 74 (C)* porque el vídeo del 13 de julio de 2023 no fue admitido ante el foro *a quo* y fue ofrecido durante una vista <u>argumentativa</u> por lo cual también resulta improcedente presentarlo ante este Tribunal.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso de epígrafe, y, en adelante, pormenorizaremos los hechos procesales atinentes a la *Petición de Certiorari*.

---

[5] Íd., pág. 34.

## II.

El caso de marras tiene su génesis el 16 de junio de 2022 cuando MS Distributors presentó una *Demanda* contra el señor Rodríguez Centeno, la señora Otero Maldonado, la Sociedad de Bienes Gananciales compuesta por ambos, Synergy, la Aseguradora de Synergy, Fulano de Tal, Sutano de Tal, Individuo A, Individuo B, la Sociedad de Bienes Gananciales A, y la Sociedad de Bienes Gananciales B en reclamo de un entredicho provisional ex parte, y un *injunction* preliminar y permanente, a tenor con la *Ley para la Protección de Secretos Comerciales e Industriales de Puerto Rico*, 10 LPRA secs. 4131 *et seq.* (Ley Núm. 80-2011); remedios por violaciones al deber de fiducia, a tenor con la *Ley General de Corporaciones de Puerto Rico*, Ley Núm. 164 del 16 de diciembre de 2009, 14 LPRA secs. 3501 *et seq.*; e indemnización por incumplimiento de contrato, e interferencia culposa de terceros con obligaciones contractuales, al amparo del *Código Civil de Puerto Rico de 2020*, Ley Núm. 55 del 1 de junio de 2020, 31 LPRA secs. 5311 *et seq.*[6]

El 26 de septiembre de 2022, y luego de haber celebrado seis (6) vistas de continuación de interdicto preliminar, el TPI notificó una *Resolución* emitida el 16 de septiembre de 2022 por la cual no expidió el interdicto preliminar solicitado por la parte peticionaria.[7] Sucesivamente, el 11 de octubre de 2022, MS Distributors presentó una *Moción Solicitando Reconsideración y Solicitud de Determinaciones de Hechos Adicionales*.[8]

El 9 de diciembre de 2022, después de examinar la solicitud de reconsideración y las oposiciones de la parte recurrida, el TPI notificó una *Resolución* emitida el 8 de diciembre de 2022 mediante

---

[6] Id., págs. 297-326.
[7] Íd., págs. 289-296.
[8] Entrada núm. 61 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del caso de epígrafe.

la cual denegó la *Moción Solicitando Reconsideración y Solicitud de Determinaciones de Hechos Adicionales* presentada por la parte peticionaria.[9] Inconforme con el dictamen del foro primario, el 12 de enero de 2023, MS Distributors presentó una *Petición de Certiorari*, asignándosele al recurso el alfanumérico KLCE202300021.[10]

El 27 de marzo de 2023, luego de examinar el recurso de *cerrtiorari*, las oposiciones de la parte recurrida y la réplica de MS Distributors,[11] esta Curia dictó *Sentencia* en la que revocó el dictamen del foro primario, ya que, la prueba desfilada estableció la existencia de un secreto comercial y/o industrial de la parte peticionaria y la apropiación indebida de este secreto comercial por parte del señor Rodríguez Centeno.[12] En lo pertinente resolvimos:

> **[C]omo cuestión de derecho, incidió el TPI al emitir la Resolución recurrida que denegó la expedición del interdicto preliminar solicitado por la peticionaria. Concluimos que en la Resolución recurrida el foro primario exige criterios más rigurosos y un quantum de prueba en exceso del que establece el Artículo 8 de Ley Núm. 80-2011para la procedencia el injunction preliminar.**[13]

No obstante, inconformes con nuestro dictamen, el 12 de abril de 2023, la parte recurrida presentó sus respectivas solicitudes de reconsideración por las cuales insistieron en que reconsideramos la revocación de la *Resolución* del TPI.[14] El 25 de abril de 2023, emitimos una *Resolución* por la cual denegamos ambas reconsideraciones.[15]

Insatisfechos con nuestro dictamen, el 26 de mayo de 2023, la parte recurrida presentó unos recursos de *certiorari* ante el Tribunal Supremo de Puerto Rico solicitando la revocación de la *Sentencia* emitida por el Tribunal.[16] Sin embargo, el 23 de junio de

---

[9] Apéndice de la *Petición de Certiorari*, págs. 287-288.
[10] Íd., págs. 256-286.
[11] Íd., págs. 194-255.
[12] Íd., págs. 176-193.
[13] Íd., pág. 192. (Énfasis en el original).
[14] Íd., págs. 152-175.
[15] Íd., pág. 151.
[16] Íd., págs. 45-147.

2023, nuestro más alto foro dictó una *Resolución* mediante la cual consolidó ambas reconsideraciones y las declaró "No Ha Lugar".[17]

En un último intento, la parte recurrida presentó unas solicitudes de reconsideración ante el Tribunal Supremo de Puerto Rico.[18] No obstante, el 6 de octubre de 2023, el Tribunal Supremo de Puerto Rico emitió una *Resolución* mediante la cual denegó ambas reconsideraciones.[19]

En un intento de convencer nuestro más alto foro de variar su determinación, el señor Rodríguez Centeno, la señora Otero Maldonado y la Sociedad de Bienes Gananciales compuesta por ambos presentaron una *Segunda Reconsideración* fechada el 13 de octubre de 2023.[20] El 10 de noviembre de 2023, el Tribunal Supremo de Puerto Rico emitió una *Resolución* por la cual la declaró "no ha lugar" la misma y ordenó a las partes atenerse a lo resuelto.[21]

El 27 de noviembre de 2023, MS Distributors, luego de que nuestra *Sentencia* del 27 de marzo de 2023 adviniera final y firme, radicó una *Moción para que se Expida Injunction conforme a la Sentencia del Tribunal de Apelaciones* ante el foro primario.[22]

El 28 de noviembre de 2023, el TPI emitió una *Orden* expidiendo un *injunction* estatutario contra los co-demandados, y en lo pertinente, les ordenó:

> 1. Que paralicen, cesen o desistan inmediatamente, bajo apercibimiento de desacato, del uso o divulgación de los Secretos Comerciales a los que la demanda se refiere.
>
> 2. Que no divulguen, usen o se beneficien de las fórmulas para los productos AMS INDUSTRIAL SOLUTIONS CAR WASH; AMS INDUSTRIAL SOLUTIONS COOLANT 33%; AMS INDUSTRIAL SOLUTIONS COOLANT 50%; AMS INDUSTRIAL SOLUTIONS FLUSHING; AMS INDUSTRIAL

---

[17] Íd., pág. 44.
[18] Íd., págs. 36-43. No se incluyó la *Reconsideración a Solicitud de Certiorari* presentada por el señor Rodríguez Centeno, la señora Otero Maldonado y la Sociedad de Bienes Gananciales.
[19] Íd., pág. 33.
[20] Íd., págs. 24-32.
[21] Íd., pág. 23.
[22] Íd., págs. 14-19.

SOLUTIONS INDUSTRIAL DEGREASER; AMS INDUSTRIAL SOLUTIONS; INDUSTRIAL MULTI-PURPOSE CLEANER; AMS INDUSTRIAL SOLUTIONS IRON REMOVER; y AMS INDUSTRIAL SOLUTIONS MAGIC SHINES, ni de cualquier versión derivada de éstas.

**3. Que no confeccionen versiones modificadas o diluidas de los productos de la demandante.**

4. Que no divulguen, usen o se beneficien de las fuentes de la materia prima para los productos a ser confeccionados por la demandante, así como sus métodos de manufactura, ni de información alguna que le permita gozar de una ventaja competitiva en el mercado.

5. Que no divulguen, usen o se beneficien de los contactos de la clientela de la demandante.

6. Que cesen de competir deslealmente o intervenir con su negocio mediante el uso indebido de secretos comerciales.[23]

El 13 de diciembre de 2023, el foro *a quo* celebró una vista argumentativa o *Status Conference*, mediante la cual la parte recurrida presentó sus posiciones sobre el inciso (c) incluido en la *Orden* notificada el 28 de noviembre de 2023.[24] De la *Minuta* de dicha vista se desprende que el TPI expresó:

El tribunal hace constar que todavía no se sabe para qu[é] más se está usando el secreto comercial porque **no se ha pasado prueba sobre ese aspecto**, por lo que decirle a la parte demandada que no puede distribuir ningún detergente que entienda que pueda estar hecho con el secreto comercial, se sobre limita a lo que el tribunal puede hacer porque no se sabe para qué está siendo utilizado el secreto comercial, si para algo.[25]

Consecuentemente, el 13 de diciembre de 2023, el TPI emitió una *Orden Enmendada* de *injunction* en la que eliminó el inciso (c) que leía, "3. Que no confeccionen versiones modificadas o diluidas de los productos de la demandante".[26]

Inconforme con esta determinación, el 19 de enero de 2024, MS Distributors presentó una *Moción en Auxilio de Jurisdicción* por

---

[23] Íd., págs. 10-11. (Énfasis suplido).
[24] Íd., págs. 1-4.
[25] Íd., pág. 3. (Énfasis suplido).
[26] Íd., págs. 6-7.

la cual solicitó que atendiéramos su recurso de *certiorari* con premura. También presentó una *Petición de Certiorari* y planteó un único señalamiento de error:

> ERRÓ CRASAMENTE EL TPI EN SU APLICACIÓN DEL DERECHO Y ABUSÓ DE SU DISCRECIÓN AL NO ACATAR LA SENTENCIA DE ESTE TRIBUNAL DE APELACIONES PUES NO IMPLEMENTÓ EL *INJUNCTION* TAL Y COMO LE FUE ORDENADO POR ESTE TRIBUNAL Y AL LIMITAR EL ALCANCE DEL MISMO.

El 23 de enero de 2024, luego de evaluar la *Moción en Auxilio de Jurisdicción* y las oposiciones presentadas por la parte recurrida, emitimos una *Resolución* mediante la cual declaramos "No Ha Lugar a la solicitud de Auxilio de Jurisdicción".

El 25 de enero de 2024, MS Distributors presentó una *Moción Solicitando Reconsideración de Resolución Denegando Moción en Auxilio de Jurisdicción*. No obstante, el 26 de enero de 2024, emitimos una *Resolución* por la cual denegamos la reconsideración.

El 1 de febrero de 2024, el señor Rodríguez Centeno, la señora Otero Maldonado y la Sociedad de Bienes Gananciales compuesta por ambos presentaron una *Oposición a Solicitud de Certiorari*. Por medio de este recurso, estos arguyeron que no procedía la expedición del recurso de *certiorari* porque la parte peticionaria pretende que se incluyan los productos de Synergy en el *injunction*, y consecuentemente prohibirle mercadear sus productos cuando no se ha pasado prueba.

Ese mismo día, Synergy presentó un *Alegato*, mediante el cual planteó que nuestra *Sentencia* del 27 de marzo de 2023 no se refería a Synergy. Según alegó, nosotros determinamos que de la prueba del caso de autos se desprendía la apropiación indebida de los secretos comerciales de la parte peticionaria por parte del señor Rodríguez Centeno, y no así de Synergy. Además, argumentó que MS Distributors nunca probó que Synergy se apropió de los secretos comerciales de la primera y nunca ha desfilado prueba indicando

que las formulaciones de la parte recurrida son producto de la apropiación indebida de los aludidos secretos comerciales.

Consecuentemente, el caso quedó perfeccionado para determinación judicial.

**III.**

**A.**

El recurso de *certiorari* es un remedio discrecional por el cual un tribunal de mayor jerarquía revisa las determinaciones de un foro inferior. ***Torres González v. Zaragoza Meléndez***, 211 DPR 821, 846-847 (2023); ***Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.***, 207 DPR 994, 1004 (2021); ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016); ***IG Builders et al. v. BBVAPR***, 185 DPR 307, 337 (2012). En ese extremo, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1,[27] establece las instancias en las cuales un foro revisor puede expedir un recurso de *certiorari*. ***Torres González v. Zaragoza Meléndez***, supra; véase, además, ***Scotiabank v. ZAF Corporation, et als.***, 202 DPR 478 (2019); ***Mun. de Caguas v. JRO Construction***, 201 DPR 703 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un

---

[27] Esta Regla dispone que:
[....]

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. (Énfasis nuestro).

recurso de *certiorari* que trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. de Caguas v. JRO Construction***, Íd.

Nuestro rol al atender recursos de *certiorari* descansa en la premisa de que es el foro de instancia quien está en mejor posición para resolver controversias interlocutorias, o de manejo del caso, y en la cautela que debemos ejercer para no interrumpir injustificadamente el curso corriente de los pleitos que se ventilan ante ese foro. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 97 (2008).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[28]

---

[28] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro).

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción "es el más poderoso instrumento reservado a los jueces". *Rodríguez v. Pérez*, 161 DPR 637, 651 (2004); *Banco Metropolitano v. Berríos*, 110 DPR 721, 725 (1981). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *García López y otro v. E.L.A.*, 185 DPR 371 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Íd.; *Medina Nazario v. McNeil Healthcare LLC*, supra, pág. 729. Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". *Hietel v. PRTC*, 182 DPR 451, 459 (2011); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001); *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997). Ello, ciertamente, constituiría un abuso de discreción.

En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". *Citibank et al. v. ACBI et al.,* supra, pág. 735. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". Íd., pág. 736. Véase, además, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

**B.**

El *injunction* o interdicto es un recurso por el cual se le requiere a la persona "absten[erse] de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra". Código de Enjuiciamiento Civil, Artículo 675, 32 LPRA sec. 3521; ***Next Step Medical v. Bromedicon***, 190 DPR 474, 485-486 (2014). La razón fundamental para su concesión es la existencia de una amenaza real de sufrir algún menoscabo para el cual no existe un remedio adecuado en la ley". Id., pág. 486.

Según nuestro sistema jurídico, existen tres (3) tipos de recursos de *injunction*; estos son: entredicho provisional, *injunction* preliminar e *injunction* permanente. Id., Regla 57 de Procedimiento Civil, *supra*, R. 57. El *injunction* preliminar es un recurso emitido por el tribunal previo a la celebración del juicio en su fondo, y usualmente, luego de la celebración de una vista "en donde las partes tienen la oportunidad de presentar prueba en apoyo y oposición a su expedición". ***Next Step Medical v. Bromedicon***, supra, págs. 486. Su función primordial es mantener el *status quo* o estado actual de las cosas en lo que se celebre el juicio y para prevenir que el demandado no promueva con su conducta una situación que convierta en académica la determinación que finalmente tome el tribunal. Íd. Específicamente para evitar que "se causen perjuicios inminentes o menoscabos irreparables a alguna persona durante la pendencia del litigio". Íd., pág. 486. Es por ello que se debe expedir de forma expedita y solamente ante una "clara e inequívoca violación de un derecho". Íd., pág. 487. Para su expedición o denegación es meritorio evaluar sus requisitos:

> (1) la naturaleza de los daños que puedan ocasionársele a las partes de concederse o denegarse el recurso; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que eventualmente la parte promovente prevalezca al

resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne académica de no concederse el injunction, y (5) el posible impacto sobre el interés público del remedio que se solicita. Id., pág. 487; véase, además, Regla 57.3 de Procedimiento Civil, *supra*, R. 57.3; ***VDE Corporation v. F&R Contractors***, 180 DPR 21, 40-41 (2010); ***Next Step Medical v. Biomet, Inc.***, 195 DPR 739, 751 (2016).

También será crucial la diligencia y buena fe con la cual obre la parte peticionaria. ***Next Step Medical v. Bromedicon***, supra, 487. Sin embargo, los requisitos previos no son absolutos, sino directorios. Íd. Además, la concesión del interdicto es discrecional, por lo cual, la determinación del TPI no debe ser revocada, al menos que se demuestre abusó de discreción. Íd. pág. 487.

Por otra parte, nuestro ordenamiento jurídico reconoce los *injunctions* estatutarios. Estos son distintos e independientes a los interdictos tradicionales. Una distinción importante entre estos dos remedios es que, "el *injunction* clásico se rige por la Regla 57.3 de Procedimiento Civil, *supra*, R. 57.3, y las disposiciones correspondientes del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521 *et seq.*, mientras que el interdicto estatutario proviene de un mandato legislativo expreso". ***Next Step Medical v. Biomet***, supra, 751. Consecuentemente, los interdictos estatutarios están "generalmente exento[s] de la normativa aplicable a este último", ya que los requisitos del *injunction* tradicional son más rigorosos. ***Next Step Medical v. Bromedicon***, supra, 497; ***CBS Outdoor v. Billboard One, Inc.***, 179 DPR 391, 409 (2010). Por lo tanto, "la concesión de un *injunction* estatutario requiere un tratamiento especial, enmarcado en un examen o escrutinio judicial más acotado", tal como es el caso del interdicto provisto por la Ley de Condominios, *supra*. ***Next Step Medical v. Bromedicon***, supra, 497.

**C.**

En lo que concierne al caso de marras, la Ley Núm. 80-2011, *supra,* permite la expedición de un interdicto estatutario cuando "quede evidenciada la existencia de una apropiación indebida de un Secreto Comercial o Industrial". *Íd.*, sec. 4136; véase, además, ***Ponce Adv. Med. v. Santiago González***, 197 DPR 891, 902 (2017). Ello, "sin que el demandante tenga que evidenciar que ello constituye un daño irreparable". *Íd.*

A tenor con el Artículo 3 de la Ley Núm. 80-2011, *supra*, sec. 4132, un secreto comercial es aquella información:

> a) de la cual se deriva un valor económico independiente, ya sea un valor actual o un valor potencial, o una ventaja comercial, debido a que tal información no es de conocimiento común o accesible por medios apropiados por aquellas personas que pueden obtener un beneficio pecuniario del uso o divulgación de dicha información; y;
> b) que ha sido objeto de medidas razonables de seguridad, según las circunstancias, para mantener su confidencialidad.
> Será también parte del Secreto Comercial toda información generada, utilizada o resultante de los intentos fallidos realizados en el proceso de desarrollar el mismo. Véase, además, ***Ponce Adv. Med. v. Santiago González***, supra, pág. 904.

Del mismo modo, las medidas de seguridad son aquellas medidas cautelares que se deberán tomar para limitar el acceso a la información bajo circunstancias particulares. Se determinarán "de acuerdo a la previsibilidad de la conducta mediante la cual el Secreto Comercial pueda ser obtenido y la naturaleza del riesgo de que se dé tal conducta, así como a la relación costo-beneficio entre la medida de seguridad y el Secreto Comercial". *Íd.*, sec. 4133; véase, además, ***Ponce Adv. Med. v. Santiago González***, supra, pág. 904.

Por otro lado, la apropiación indebida es:

> a) la adquisición de un Secreto Comercial de otro por parte de una persona que conocía o debió haber conocido que lo adquirió por medios inapropiados, ya sea directa o indirectamente; o
> b) la divulgación o uso de un Secreto Comercial de otro, sin autorización expresa o implícita, por una persona que:

i. utilizó medios inapropiados para conocer el Secreto Comercial; o

ii. al momento de la divulgación o uso sabía o debió haber sabido que el Secreto Comercial fue:

1. obtenido por medio de una persona que adquirió la información utilizando medios inapropiados;

2. obtenido bajo circunstancias que dan lugar a un deber de mantener su confidencialidad o limitar su uso;

3. obtenido por medio de una persona que tenía un deber con el dueño del Secreto Comercial de mantener su confidencialidad o de limitar su uso; o

4. conocido por accidente o error.

*Íd.*, sec. 4134.

## IV.

Tras un análisis objetivo, sereno y cuidadoso de la *Petición de Certiorari*, resolvemos que debemos abstenernos de ejercer nuestra función revisora, a tenor con los criterios esbozados en la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, y en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40. A nuestro juicio, no atisbamos motivo o error alguno que amerite nuestra intervención. Por medio de la *Petición de Certiorari*, la parte peticionaria formuló un <u>único</u> señalamiento de error, el cual <u>no cuestiona la apreciación de la prueba</u> por el foro primario. Su alegación es que erró crasamente el TPI al aplicar el derecho y al no dictar una orden de *injunction*, como le fue ordenado por este Tribunal. Sin embargo, en nuestra *Sentencia* emitida el 27 de marzo de 2023, este Tribunal no proveyó instrucciones específicas para la expedición de la *Orden* de *injunction*, por lo cual <u>el TPI tenía discreción al emitir la misma y ejerció su discreción.</u>

Por lo tanto, la determinación del foro primario es esencialmente correcta en derecho y, por ende, no intervendremos con su discreción.

## V.

Por las razones pormenorizadas precedentemente, se *deniega* la expedición del auto de *certiorari.*

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones